## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MELINDA A. GOODE,

　　　　　Plaintiff,

　　v.　　　　　　　　　　　　　　　　　Case No. 8:11-cv-2414-JFM

AMERICAN VETERANS, INC., *et al.*

　　　　　Defendant.

## DEFENDANT AMERICAN VETERANS, INC.'S
## MEMORANDUM IN SUPPORT OF MOTION
## TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Ariana Wright Arnold (Federal Bar No. 23000)
Jennifer Curry Bowman (Federal Bar No. 29038)
JACKSON LEWIS LLP
2800 Quarry Lake Drive, Suite 200
Baltimore, Maryland  21209
Phone: (410) 415-2000
Fax: (410) 415-2001
Ariana.Arnold@jacksonlewis.com
Jennifer.Bowman@jacksonlewis.com

*Counsel for Defendant,*
*American Veterans, Inc.*

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................................1

II.  STATEMENT OF FACTS .............................................................................................1

   A.  Plaintiff Applied And Interviewed For The Meeting Planning Position At
       AMVETS .................................................................................................................1

   B.  Plaintiff's Offer Of Employment ............................................................................2

   C.  As A Meeting Planner, Plaintiff's Employment Was At-Will And She Was
       Classified As An Exempt Employee.........................................................................3

   D.  Plaintiff Filed A Complaint With The U.S. Department Of Labor Regarding
       Violations Of The FLSA...........................................................................................4

   E.  Due To Budgetary Constraints, AMVETS Was Forced To Perform A
       "Reduction In Force" Which Included The Elimination Of The Meeting Planner
       Position And, Thus, The Termination Of Plaintiff's Employment............................5

   F.  As Part Of AMVETS Cost Saving Measures, It Entered An MOU With Events
       At Last To Perform Event Planning...........................................................................5

III. LEGAL STANDARDS ....................................................................................................6

   A.  Motion To Dismiss Under Rule 12(b)(6) .................................................................6

   B.  Motion For Summary Judgment Under Rule 56(c). ..................................................7

IV. ARGUMENT ....................................................................................................................8

   A.  Count I – Plaintiff's Claim Of Abusive Discharge Must Be Dismissed
       Because She Failed To Exhaust Her Administrative Remedies And She
       Fails To Establish A Clear Mandate Of Public Policy Which Was
       Violated By Her Termination. ...................................................................................8

       1.  Plaintiff Failed To Exhaust Her Administrative And Judicial
           Remedies Available Under Each Of The Statutory Provisions Cited In
           Her Abusive Discharge Claims.....................................................................10

       2.  Plaintiff's Abusive Discharge Claim Relying On The Public
           Policy Exception Fails To Articulate A Violation Of A
           Clear Mandate Of Public Policy. .................................................................11

B.  <u>Count II</u> – Plaintiff's Breach of Contract Claim Must Be Dismissed
Because Plaintiff Was An At-Will Employee And There Was No
Employment Contract That Limited AMVETS's Right To
Terminate Her Employment. ...................................................................12

C.  <u>Count III</u> – Plaintiff's Claim Under ERISA Should Be Dismissed Because
She Fails To State A Claim Upon Which Relief Can Be Granted...........13

D.  <u>Count IV</u> – Plaintiff's FLSA Retaliation Claim Must Be Dismissed Because
She Fails To Plead Sufficient Facts To Sustain Such A Claim. ..............15

E.  <u>Count V</u> – Plaintiff's Tortious Interference With Business, Economic
And Contractual Relations Claim Against AMVETS Fails Because She Did
Not Have A Contractual Relationship With AMVETS And She Fails To
Allege Any Such Wrongdoing By AMVETS..........................................16

F.  <u>Count VI</u> – Plaintiff's Civil Conspiracy Claim Should Be Dismissed
Because Plaintiff Fails To Show That The Alleged Wrong Doers Committed
An Unlawful Act....................................................................................17

G.  <u>Count VII</u> – Plaintiff's Negligent Misrepresentation Claim Should Be
Dismissed Because She Fails To State A Claim Upon Which Relief Can
Be Granted. ..........................................................................................19

H.  <u>Count VIII</u> – Intentional Misrepresentation And Fraud Claims Must Fail;
The Alleged Statements Made Were Too Broad And Vague To Establish
Detrimental Reliance. ...........................................................................21

   1.  The Complaint Fails To Allege Sufficient Detrimental Reliance On
       The Allegedly Fraudulent Promise. ...............................................22

   2.  Plaintiff Could Not Reasonably Have Relied On The Allegedly
       Fraudulent Promise Because The Alleged Promise Was Too Vague
       And Indefinite. ..............................................................................23

I.  <u>Count IX</u> – Plaintiff's Claim of Intentional Infliction Of Emotional
Distress Should Be Dismissed Because She Fails To State A Claim Upon
Which Relief Can Be Granted. ..............................................................24

V.  CONCLUSION.................................................................................................27

Defendant, American Veterans, Inc. ("Defendant" or "AMVETS"), by and through its undersigned counsel, hereby submits this memorandum in support of its Motion, pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure to dismiss this action, or in the alternative to grant summary judgment.  For the reasons that follow, the Complaint should be dismissed for failure to state a claim or summary judgment granted for Defendant AMVETS.

## I.   INTRODUCTION

On August 29, 2011, Plaintiff Melinda A. Goode ("Plaintiff" or "Goode") filed a nine-count Complaint against AMVETS, her former employer.  She also named two former AMVETS employees as Defendants.  The Complaint asserts the following litany of claims: Count I – Abusive Discharge; Count II – Breach of Express and Implied Agreement; Count III – Violation of ERISA; Count IV – Violation of the Fair Labor Standards Act; Count V – Tortious Interference With Business, Economic and Contractual Relations; Count VI – Civil Conspiracy; Count VII – Negligent Misrepresentation; Count VIII – Intentional Misrepresentation and Fraud; and Count IX – Intentional Infliction of Emotional Distress.  However, even assuming the facts as set forth in the Plaintiff's Complaint and attached documents, her Complaint fails to state a claim and AMVETS is entitled to judgment as a matter of law.

## II.  STATEMENT OF FACTS[1]

### A.  Plaintiff Applied And Interviewed For The Meeting Planner Position At AMVETS.

Plaintiff applied for the vacant Meeting Planner position at AMVETS on August 25, 2008 and scheduled an interview for the position on August 29, 2008.  Complaint ¶¶ 36, 38. Plaintiff interviewed with Jim King and Maria Isaja and expressed an interest in a long-term

---

[1]   The facts as set forth here which are drawn predominantly from Plaintiff's Complaint and are presumed to be true for the purposes of this motion only.

position with AMVETS.  *Id.* at ¶ 42.  During the interview, Mr. King and Ms. Isaja indicated that AMVETS provided an excellent working environment and that many employees had been with the organization for a significant period of time.  *Id.* at ¶40; Exhibit 1, Affidavit of Maria Isaja at ¶4.

### B.  Plaintiff's Offer of Employment.

Following Goode's interview, on or about September 2, 2008, Ms. Isaja contacted Goode by telephone to make an informal offer of employment.  *Id.* at ¶ 51; Affidavit of Maria Isaja at ¶5.  Specifically, Ms. Isaja offered Goode a salary of $38,000 and a salary review after her initial six months of work, which Goode accepted.  *See* Complaint ¶ 52; Affidavit of Maria Isaja at ¶5.

On or about September 4, 2008, Goode received an official letter from Mr. King offering employment ("Offer Letter").  *Id.* at ¶ 53; Exhibit 2, Offer Letter.  Similar to the informal offer from Ms. Isaja, the Offer Letter stated that Goode would receive a salary of $38,000 and would undergo a salary review after her initial six months of work.  *Id.*  The Offer Letter asserted that Goode was being offered a "full-time exempt position with AMVETS."  *Id.*  The Offer Letter also specifically stated the following:

> Finally, please understand that Maryland is an "employment at will" state.  This means that either you or AMVETS may, at your or our discretion, terminate our employment relationship at any time.  Completion of the designated probationary period does not change your status as an at-will employee or in any way restrict AMVETS's right to terminate you or change the terms or conditions of your employment.  This letter cannot be construed as a contract, but as an offer of employment for an indeterminate period of time.

*Id.*  The letter went on to state that setting aside the legalities, AMVETS was "excited, and looking forward to having [Goode] as part of the AMVETS 'team.'"  *Id.*  This is standard language used by AMVETS in offers of employment where there is no contractual relationship.

Goode was further assured verbally by Ms. Isaja that the terms of her employment offer had not changed in any way – namely that she would receive a salary of $38,000 and would undergo a salary review after her initial six months of work.  *See* Complaint, ¶ 59; Aff. of Maria Isaja at ¶ 5.  Satisfied with the terms of employment, Goode signed the Offer Letter.  *Id.* at ¶ 60.

### C.  As A Meeting Planner, Plaintiff's Employment Was At-Will And She Was Classified As An Exempt Employee.

Plaintiff began her employment at AMVETS on September 8, 2008.  On that day, Goode was given a copy of AMVETS Personnel Policies Manual ("Policies Manual").  *See* AMVETS Personnel Policies Manual, attached as Exhibit 3.  In the Introduction of the Policies Manual, AMVETS states:

> This personnel policy manual is not a contract between any employee and AMVETS and it should not be considered as such under any conditions. AMVETS, in accordance with applicable state law, is an employment at will employer.  At will employees may be terminated with or without notice or cause.

*Id.* at 6.  The Manual also contained a Status Definitions section which defined "exempt employees" as exempt from the daily and weekly overtime requirements of the Fair Labor Standards Act and the Walsh-Healey Public Contracts Act.  *Id.* at 8.  As a full-time administrative employee, Goode was classified as an exempt employee with regard to the Fair Labor Standards Act ("FLSA").[2]  *See* Meeting Planner Job Description, attached as Exhibit 4.

The Manual also contained a section titled "Reduction in Force" ("RIF") which provided that AMVETS may implement a RIF due to shortage of work, funds, abolition of position, or changes in duties or organization.  *See* Exhibit 3 at 17.  It further stated that in a RIF, the organization will dismiss probationary and temporary employees "in the job category undergoing

---

[2]        As noted above in Exhibit 4, Goode was notified of this exempt status for the Meeting Planner position in her Offer Letter dated September 4, 2008, which she signed in acknowledgment of the terms.

the 'downsizing'" first.  *Id.*  Goode signed a Receipt of Personnel Policies Manual on September 8, 2008, acknowledging that the Manual was not intended to be construed as a contract.  *See* Receipt of Personnel Policies Manual, attached as Exhibit 5.  The acknowledgment further stated that AMVETS would review the Policies Manual and modify, increase or decrease benefits contained therein as necessary.  *Id.*  Finally, with regard to at-will employment, the Receipt itself provided the following statement for the signor:

> I further understand the employment at-will doctrine, a doctrine that is part of the fabric of my state's non-statutory or "common" law, which provides that an employee who does not have a written contract of employment for a specified period of time can be terminated at any time.  An at-will employment can be terminated with or without notice or cause.

*Id.* (emphasis added).  Thus, Goode was notified in writing on three different occasions that her employment at AMVETS was characterized as at-will.

### D. Plaintiff Filed A Complaint With The U.S. Department Of Labor Regarding Violations Of The FLSA.

On or about January 10, 2009, AMVETS received correspondence from the U.S. Department of Labor ("DOL") indicating that Goode had filed a complaint with the agency alleging that AMVETS had violated her rights under the FLSA.  *See* DOL Correspondence, attached as Exhibit 6; Affidavit of Maria Isaja at ¶8.  As a result, the DOL investigated the complaint and AMVETS fully cooperated with the investigation.  To date, the DOL has not pursued any action against AMVETS for any of the allegations raised in Goode's complaint.  *See* Affidavit of Maria Isaja at ¶8.

**E. Due To Budgetary Constraints, AMVETS Was Forced To Perform A "Reduction In Force" Which Included The Elimination Of The Meeting Planner Position And, Thus, The Termination Of Plaintiff's Employment.**

Beginning in the Summer of 2009, AMVETS was facing significant budget shortages which were bound to impact its staff and programs.  *See* Affidavit of Maria Isaja at ¶9.  AMVETS eventually had no choice but to issue a RIF.  *Id.* at ¶8.  On August 26, 2009, AMVETS abolished the Meeting Planner position in a RIF.[3]  *See* DLLR Request for Separation Information, attached as Exhibit 8.  As a result, Goode was terminated from AMVETS effective August 27, 2009.  *See* Correspondence from Jim King, August 26, 2009, attached as Exhibit 9.  Pursuant to its policies, AMVETS paid Goode for her accrued vacation and sick leave.  *Id.*  The RIF had nothing to do with any discrimination or retaliation toward Goode.  *See* Affidavit of Maria Isaja at ¶11.  It was simply a difficult business decision that AMVETS had to make.  To date, the Meeting Planner position at AMVETS has not been reestablished and AMVETS has not hired a new employee to take over Goode's position in the organization.  *See* Affidavit of Maria Isaja at ¶12.

**F. As Part Of AMVETS Cost Saving Measures, It Entered A MOU With Events At Last To Perform Event Planning.**

Following the decision to eliminate the permanent Meeting Planner position at AMVETS, the organization entered into a Memorandum of Understanding ("MOU") with Events At Last.  *See* Memorandum of Understanding, attached as Exhibit 10.  Linda Tucker, a Defendant in this action, is the owner and operator of Events At Last and formerly held the Meeting Planner position at AMVETS.  The MOU was agreed to on September 1, 2009.  *Id.*

---

[3]       Notably, Ms. Hart also lost her position at AMVETS as a result of a RIF and further cost saving measures. *See* Correspondence to Velma Hart, attached as Exhibit 7.

However, despite securing this agreement, Events At Last did not perform any event planning services for AMVETS during the MOU period which ended in August 2010. *Id.* Rather, it was not until October 2010 and January 2011 that Events At Last performed any services for AMVETS. *See* Events At Last Invoices, attached as Exhibit 10.

### III.   LEGAL STANDARDS

**A. Motion To Dismiss Under Rule 12(b)(6).**

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff is obligated to "provide the grounds of his entitlement to relief," including "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65, 1974 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *Qwest Communications Corp. v. Maryland-National Capital Park & Planning Comm'n*, 553 F. Supp. 2d 572, 574 (D. Md. 2008).   A complaint may withstand a motion to dismiss if it contains plausible factual allegations that demonstrate something more than the "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).   Satisfying this obligation "requires more than labels and conclusions…[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct at 1964-65.

Although a court evaluating a defendant's motion to dismiss must assume that all facts in the complaint are true, the court need not accept unsupported legal allegations. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).   Nor must it accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Conclusory assertions are simply insufficient to surpass the requirements of Rule 12(b)(6). *See Giarratano*, 521 F.3d at 304.

To pass muster under Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief *above the speculative level*…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S. Ct. at 1965 (emphasis added) ("[T]he pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."). In order to survive a Rule 12(b)(6) motion to dismiss a plaintiff must plead facts sufficient to support a claim for relief. *Ashe v. Giant of Maryland, LLC*, Civil Action No. AW-06-1293, 2007 WL 7020451, at *4 (D. Md. July 17, 2007) (internal citations omitted).

### B. Motion For Summary Judgment Under Rule 56(c).

If matters outside the pleadings are presented the motion may be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

"Recent cases of the Supreme Court have made increasingly clear . . . the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses from proceeding to trial.'" *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). As the Supreme Court stated in *Celotex*:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action" . . . . One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.

*Celotex*, 477 U.S. at 323-24.

In *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986), the Supreme Court explained the non-moving party's burden in responding to a motion for summary judgment as follows:

> [The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts . . . . In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial* . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 (emphasis in original) (internal quotation marks omitted). "If the evidence [submitted by a party opposing summary judgment] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to survive a motion for summary judgment. *Id.* at 252.

## IV.    <u>ARGUMENT</u>

**A. <u>Count I</u> – Plaintiff's Claim Of Abusive Discharge Must Be Dismissed Because She Failed To Exhaust Her Administrative Remedies And She Fails To Establish A Clear Mandate Of Public Policy Which Was Violated By Her Termination.**

Count I of Goode's Complaint alleges that she was subject to abusive discharge or wrongful termination when her position at AMVETS was eliminated. She sets forth several alternate theories to sustain her claim. First, Plaintiff alleges she was terminated in part because she complained about violations of the Equal Pay For Equal Work laws, Maryland Code, Labor and Employment Article, Title 3. *See* Complaint, ¶ 105, 112. Second, along those same lines, Plaintiff alleges she was terminated in part out of retaliation for exercising her rights under the Maryland Occupational Health and Safety laws, Maryland Code, Labor and Employment Article,

Title 5.[4]  *Id.* at ¶¶ 105, 111.  Third, Plaintiff alleges she was terminated in part for complaining of violations of the Fair Labor Standards Act, 29 U.S.C. § 29 U.S.C. 200, *et seq*.  *Id.* at ¶ 105. Fourth, Plaintiff cites to numerous sections of the Maryland Human Relations Act, Maryland Code, State Government Article, Title 20 ("Title 20"), referring to prohibitions against discrimination in employment.[5]  *Id.* at ¶¶ 107-110.  Finally, Plaintiff alleges that she was abusively discharged for reporting potential instances of misuse of money and property from AMVETS pursuant to 26 U.S.C. § 501(c)(19)(C).  *Id.* at ¶ 113-115.

The general rule in Maryland is that an at-will employee can be fired at any time for any reason, or for no reason at all.  *Adler v. Am. Standard Corp.*, 291 Md. 31, 47 (1981).  However, as a narrow exception to the general rule Maryland recognizes a common-law wrongful discharge claim where the discharge "contravened some clear mandate of public policy."  *Id.* However, there is no basis for a common law wrongful discharge claim where the underlying public policy is embodied in a statute which provides its own enforcement mechanism and remedies.  *Makovi v. Sherwin-Williams Co.*, 316 Md. 603 (1989).  In the alternative, if there is no specific statute that provides a remedy of its own, the plaintiff must clearly articulate the basis

---

[4]     Goode indicates that she was retaliated against for reporting violations under the Maryland Occupational Safety and Health ("MOSH") laws.  *See* Complaint, ¶ 105, 111.  Pursuant to MOSH, an employer generally is required to provide each employee with employment and a place of employment that is safe and healthful and free from each recognized hazard that is causing or likely to cause death or serious physical harm to the employee.  Md. Code Ann., Occ. Safety and Health, § 5-104(a).  Goode's Complaint utterly fails to explain what complaint she made that alleged violation of these requirements on AMVETS's part.

[5]     Oddly, Goode makes several references to violations of Title 20 of the Maryland Code in her Complaint yet never once alleges how she was discriminated against by AMVETS.  Generally, Title 20 prohibits employers from discharging or otherwise discriminating against an individual on the basis of their race, color, religion, sex, age, national origin, marital status, sexual orientation, genetic information or disability.  Md. Code Ann., Lab. & Empl. Art., § 20-606.  Here, Plaintiff simply raises no allegations of discrimination of any kind which could sustain a Title 20 claim.

for her claimed violation of a clear mandate of public policy.   Plaintiff's Complaint fulfills neither obligation.

> **1.    Plaintiff Failed To Exhaust Her Administrative And Judicial Remedies Available Under Each Of The Statutory Provisions Cited In Her Abusive Discharge Claims.**

Where a statute provides a special form of remedy, the plaintiff must use that form rather than any other.   *Solely v. Md. Comm'n on Human Relations*, 277 Md. 521, 526 (1976) (*citing Hartman v. Prince George's Co.*, 264 Md. 320, 323 (1972); *Pressman v. state Tax Commission*, 204 Md. 78, 84 (1954); *Tanner v. McKeldin*, 202 Md. 569, 577 (1953)).   "[I]t is a settled principle of statutory construction that, absent a legislative indication to the contrary, it will usually be deemed that the Legislature intended the special statutory remedy to be exclusive." *White v. Prince George's County*, 282 Md. 641, 649 (1978).   Maryland courts and this Court consistently have held that where statutes provide the exclusive remedy for a cause of action, dismissal of abusive discharge claims brought under the guise of those provisions is appropriate. The purpose of the statutory remedies "would be impeded rather than promoted if a grievant were allowed to bypass, under the guise of an action for abusive discharge, as plaintiff has attempted to do, the very administrative mechanisms created by the [] legislature to administer and resolve such claims."   *MacGill v. Johns Hopkins Univ.*, 33 Fair Empl. Prac. Cas. (BNA) 1254, 1258 (D. Md. 1983).

Here, each of the statutes under which Goode is claiming protection provide for their own private cause of action, which she failed to pursue.   Specifically, there is a separate enforcement action for retaliation and discharge of an employee who sought to protect her rights or file a

complaint under the Equal Pay Equal Work Act,[6] the Maryland Occupational Safety and Health Act,[7] the Fair Labor Standards Act[8] and Title 20 of the Maryland Code.[9]

Plaintiff has failed to allege that she pursued the appropriate administrative or judicial remedies under those statutory provisions.[10]   She therefore cannot now seek to lump those allegations under the broad umbrella of abusive discharge.   Thus, Plaintiff's abuse discharge claims in Count I should be dismissed.

### 2. Plaintiff's Abusive Discharge Claim Relying On The Public Policy Exception Fails To Articulate A Violation Of A Clear Mandate Of Public Policy.

Short of citing a statutory provision by which an abusive discharge claim may stand, a plaintiff can also support an abusive discharge claim by articulating a violation of a clear mandate of public policy.  *Adler*, 291 Md. at 35-36.  The tort of wrongful discharge in Maryland

---

[6]     Md. Code, Lab. & Empl. Art., § 5-604(b) states that an employer may not discharge or discriminate against an employee because she filed a complaint under the subtitle and § 5-604(c) provides that an employee who believes she has been retaliated against in violation of section (b) may submit a written complaint to the Commissioner that specifically alleges the discrimination and includes the signature of the employee.  Plaintiff has failed to allege that she filed a complaint pursuant to section (c).

[7]     Md. Code, Lab. & Empl. Art., § 3-427(a) states that if an employer pays an employee less than the wage required under the subtitle, the employee may bring an action against the employer to recover the difference between the wage paid to the employee and the wage required.  Again, Plaintiff has failed to plead that she ever pursued such a separate cause of action.

[8]     29 U.S.C. §218c(b)(1) provides that an employee who believes she was discharged or discriminated against by her employer in violation of the section may seek relief in accordance with the procedures outlined under the whistleblower protection statute, 15 U.S.C. §2087b.  Under that section, a terminated employee must file a complaint with the Secretary of Labor no later than 180 dates after the date on which such violation occurs.  A lawsuit can be filed only after the employee follows these actions.

[9]     Md. Code, State Gov't Art., § 20-1213 provides that a plaintiff must file a timely charge with the Maryland Commission on Civil Rights ("MCCR") or the Equal Employment Opportunity Commission ("EEOC") prior to filing a lawsuit.  Failure to do so within 6 months after the alleged date of discrimination results in a complete bar to any claims under Title 20.

[10]     Goode filed a complaint with the DOL regarding her FLSA claim as noted above; DOL investigated the claim and found it to be meritless.  To the extent that Plaintiff's claim based on the FLSA seeks to remedy what she perceives as retaliation, it is addressed by the separate claim in Count IV, and should not be the basis for a separate wrongful termination claim.

is a narrow one.  For an employee to prevail on a wrongful discharge claim, he must allege violation of a public policy that is "sufficiently clear to provide the basis for a tort or contract action."  *Adler*, 291 Md. at 42.  Thus, the plaintiff must allege that the wrongful termination was based generally upon some legislative enactment, prior judicial decision or administrative regulation.

Again, all the allegations raised in Count I of the Complaint are based upon state and federal laws, each of which provide their *own mechanism* of enforcement and remedy – whether judicial or administrative.  Not only does Goode fail to allege that she exhausted these remedies but she fails to assert violations of any *other* "public policy" which would support an abusive discharge claim.  Failure to articulate a clear mandate of public policy is fatal to Goode's abusive discharge claim.  As a result, Count I of the Complaint must be dismissed.

**B. Count II – Plaintiff's Breach of Contract Claim Must Be Dismissed Because Plaintiff Was An At-Will Employee And There Was No Employment Contract That Limited AMVETS's Right To Terminate Her Employment.**

It is well recognized under Maryland law that an "employment contract of indefinite duration, that is at-will, can be legally terminated at the pleasure of either party at any time." *Adler*, 291 Md. at 35; *see also, Gill v. Computer Equip. Corp.*, 266 Md. 170, 179 (1972) (citing *McCullough Iron Co. v. Carpenter*, 67 Md. 554, 557 (1887)) (it is a longstanding principle in Maryland that an indefinite hiring is *prima facie* a hiring at-will).  Maryland courts have held that an employment relationship presumptively is at-will unless the parties clearly and expressly set forth their agreement that the contract is to last for a specific period of time.  *Lubore v. RPM Assocs., Inc.*, 109 Md. App. 312, 327, *cert. denied*, 343 Md. 565 (1996).  *See also, Hrehorovich v. Harbor Hosp.*, 93 Md. App. 772, 790 (1992) ("In the absence of [a contract for a definite

term], appellant was, as a matter of law, an at-will employee.  In Maryland, at-will employment is a contract of indefinite duration that can be terminated at the pleasure of either party at any time.").  In fact, an employer or employee may terminate an at-will employment relationship at any time even though to do so might be unfair or prejudicial to the other party.  *Parks,* 421 Md. at 73.  *See also Suburban Hospital v. Dwiggins*, 324 Md. 294, 303 (1991).

In this case, the facts pled in the Complaint do not indicate that a contract between Goode and AMVETS existed, let alone that there was a contract for a definite term.  Goode alleges that she believes that she entered into an employment contract with AMVETS based upon statements made during her interview and the language in her offer of employment.  *See* Complaint, ¶¶ 45-47.  The language in the offer letter, as well as the Policies Manual, however, both explicitly state that Plaintiff's employment was "at-will" and that nothing in either document was meant to create an employment contract.  *Id.* at ¶¶ 56-58; Exhibit 3.  Without a contract or writing stating otherwise, Goode's employment with AMVETS was at-will under Maryland law and AMVETS had the right to end the relationship at any time with or without cause.  *Elliott v. Board of Trustees of Montgomery County Community College*, 104 Md. App. 93, 99 (1995).  Thus, Count II of the Complaint should be dismissed.

## C. <u>Count III</u> – Plaintiff's Claim Under ERISA Should Be Dismissed Because She Fails To State A Claim Upon Which Relief Can Be Granted.

Count III of the Complaint alleges that in discharging Goode, AMVETS meant "to interfere with her attainment of rights" under organization's ERISA covered plan.  *See* Complaint, ¶¶ 136-140.  Section 510 of ERISA provides a federal cause of action against any organization who discharges a participant in an employee benefit plan in order to prevent that person from attaining a benefit under the plan.  29 U.S.C. §1140.  The section provides that:

§ 1140.  *Interference with protected rights.*

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. 301, *et seq.*], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.  It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act.  The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

The statute has been interpreted to prohibit an employer from discharging an employee 'for the purpose of interfering with the attainment of *any* right to which such participant *may* become entitled' under a benefit plan.  *Conkwright v. Westinghouse Electric Corp.*, 933 F.2d 231, 237 (4th Cir. 1991) (emphasis in original).  However, terminating an employee close in time to the vesting of an employee benefit plan does not automatically give rise to an inference of discrimination.  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993).   In fact, a terminated employee cannot recover under Section 510 of ERISA "unless the former employee establishes that his termination was effected by the employer to prevent the vesting of the employee's pension rights."  *Weir v. Litton Bionetics, Inc.,* 41 Fair Empl. Prac. Cas. (BNA) 1150 , at *12 (1986) (*citing West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980)).

Ms. Goode simply cannot meet this standard.  Plaintiff fails to refer to any causal connection between the abolishment of her position at AMVETS and an alleged attempt to prevent her from vesting in AMVETS's employee benefit plan.  Accusing AMVETS of discharging her for the purpose of interfering with her attainment of unspecified rights under ERISA, without any supporting facts or evidence, is not enough to sustain a Section 510 ERISA

-14-

claim.[11]  Plaintiff's inability to connect her failure to vest in the benefit plan with the end of her employment is fatal to her ERISA claim.  As a result, Count III of the Complaint must be dismissed.

###    D. <u>Count IV</u> – Plaintiff's FLSA Retaliation Claim Must Be Dismissed Because She Fails To Plead Sufficient Facts To Sustain Such A Claim.

To prove retaliation under the FLSA, a plaintiff must show that (1) she engaged in activity statutorily protected by the FLSA; (2) she suffered some adverse employment action subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action.  *Jackson v. Mayor & Balt. City*, 2009 WL 2060073, at *6 (D. Md. July 14, 2009) (*citing Darveau v. Detecon, Inc.*, 515 F. 3d 334, 340 (4th Cir. 2008).  In this case, Goode cannot satisfy the third element and her FLSA retaliation claim must fail.

Closeness in time between filing a complaint and an employer firing an employee may support a causal connection.  *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998) (internal citations and quotations omitted).  However, several courts including this Court, have found that a period of six months to a year between the protected activity and the adverse employment action – without other evidence of causation, is insufficient as a matter of law to establish retaliation.  *Jackson,* 2009 WL 2060073, at *21.  *See, e.g., Brown v. Duke Energy*

---

[11]      As part of her employment offer, Goode was entitled to enroll in AMVETS's comprehensive group medical and dental plan beginning November 1, 2008.  *See* Exhibit 2.  To AMVETS's knowledge, Goode took advantage of this opportunity and received both medical and dental benefits through AMVETS.  Thus, the only benefits Goode can claim to have been denied are retirement benefits.  AMVETS supports a defined contribution plan where an employee can choose to contribute up to 19% of her pay.  *See* Exhibit 3 at p. 21.  Employees who participate in the plan are always 100% vested as to the amount they contribute to the plan as well as earnings on those contributions.  *Id.*  However, Plan participants do not become vested in the *employer contributions* until they have been employed at AMVETS for at least two years and have met the 1,000 hours per year requirement.  *Id.*  In this case, the RIF eliminated Goode's job more than a year prior to her vesting date in the Plan.

*Corp.,* No. 3:97CV404-V, 2000 U.S. Dist. LEXIS 3299, at *5-6 (W.D.N.C. Feb 8, 2000); *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that temporal proximity can only be used to infer causal connection when the proximity in time between the employer's knowledge of the protected activity and the adverse employment action is "very close"); *Bragg v. Orthopaedic Assocs. of Va., Ltd.*, 2007 WL 702786, 100 Fair Empl. Prac. Cas. (BNA) 691, at *27-28 (E.D. Va. Mar. 2, 2007) ("[T]he passage of eleven months between the alleged protected activity and the alleged constructive discharge cannot, by itself, provide the causal link required for the plaintiff to make a *prima facie* case of retaliation.").

Here, more than eight months passed between Goode's DOL complaint and the elimination of her position.  Further, she has failed to present any evidence of a causal connection other than the fact that she made such a complaint.  She therefore has not established FLSA retaliation as a matter of law.

**E. <u>Count V</u> – Plaintiff's Tortious Interference With Business, Economic and Contractual Relations Claim Against AMVETS Fails Because She Did Not Have A Contractual Relationship With AMVETS And She Fails To Allege Any Such Wrongdoing By AMVETS.**

To establish tortious interference with business, economic and contractual relations, a plaintiff must show that the defendant committed (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage or loss, without right or justifiable cause on the part of the defendants, which constitutes malice; and (4) actual damage and loss resulting.  *Blondell v. Littlepage,* 413 Md. 96 (2010); *Bleich v. Florence Crittenton Servs.*, 98 Md. App. 123, 146-47 (1993); *Wilmington Trust Co. v. Clark*, 289 Md. 313, 329 (1981); *Continental Casualty Co. v. Mirabile*, 52 Md. App. 387, 402, *cert. denied*, 294 MD. 651 (1982)).

Nowhere in Count V of the Complaint does Goode make any allegations that *AMVETS* tortuously interfered with her business or contractual relationship.  Each of Goode's allegations made with respect to this Count is made against Ms. Hart and Ms. Tucker.  Goode does allege that she had a business relationship with AMVETS by way of her employment, Complaint, ¶162, and that AMVETS was induced by Ms. Hart and Ms. Tucker to terminate her employment for their benefit.  *Id.* at ¶¶ 163-64.  Count V of the Complaint, however, does not even attempt to allege any facts against AMVETS which could support a *prima facie* case of tortious interference with business, economic and contract relations.   Thus, Count V against AMVETS must be dismissed.

### F.  Count VI – Plaintiff's Civil Conspiracy Claim Should Be Dismissed As Plaintiff Fails To Show That The Alleged Wrong Doers Committed An Unlawful Act.

In order to state a claim for civil conspiracy, a plaintiff must show: (1) a confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (3) actual legal damage resulting to the plaintiff.  *See Robb v. Wancowicz*, 119 Md. App. 531 (1998); *BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400 (D. Md. 2001); *Superior Bank v. Tandem Nat'l Mortgage*, 197 F. Supp. 2d 298 (D. Md. 2000).  "'No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort.'"  *Alleco, Inc. v. Harry & Jeanette Weinberg Foundation*, 340 Md. 176 (1995) (internal citations omitted).  *See also, Hovatter v. Widdowson*, No. CCB-03-2904, 2004 WL 2075467, at *33 (D. Md. Sept. 15, 2004) ("Under Maryland law, civil conspiracy is not a separate tort, but rather serves to extend liability to co-conspirators once plaintiff has established some other tortious wrong.").

In Maryland, it makes no difference what the conspirators' motives may be if their acts are not unlawful. *Columbia Real Estate Title Ins. Co. v. Caruso*, 39 Md. App. 282 (1978). Unless the plaintiff alleges some unlawful or tortious acts committed by the defendant, a conspiracy action cannot be maintained even though the defendant had an intent to defraud the plaintiff. *Columbia*, 39 Md. App. at 288; *see also Gai Audio of N.Y., Inc. v. Columbia Broad. Sys., Inc.*, 27 Md. App. 172 (1975) (it is necessary to show that a defendant had knowledge of an illegal enterprise *and* that the defendant performed one or more overt acts in furtherance of the conspiracy).

To prove the commission of an unlawful act in a civil conspiracy action, it is not necessary to show that the act was criminal in nature. *Columbia*, 39 Md. App. at 288.  An unlawful act, as employed in a civil conspiracy context, connotes a tort, breach of contract or other actionable wrong. *Id.* at 289.  As one court has noted:

> The act must be of such a character as to create an actionable wrong before the right of recovery against the defendant exists, and to create an actionable wrong the legal rights of the plaintiff must in some way be invaded.  There must be a violation of legal right committed knowingly to create a cause of action.

*Knoche v. Standard Oil Co.*, 138 Md. 278 (1921).

Here, Goode alleges simply that because AMVETS entered into a MOU with Ms. Tucker's company, there must have been some conspiracy to replace her.  Plaintiff, however, fails to allege any illegal acts performed by the Defendants which were the basis of their conspiracy.   Without *any* allegations of such unlawful actions, Goode cannot sustain a *prima facie* case of civil conspiracy and Count VI of the Complaint must be dismissed.

**G. Count VII – Plaintiff's Negligent Misrepresentation Claim Should Be Dismissed Because She Fails To State A Claim Upon Which Relief Can Be Granted.**

The tort of negligent misrepresentation provides a remedy for one acting in reliance upon a false representation by another whose conduct, in rendering the representation, was careless but not deliberately fraudulent. *Giant Food, Inc. v. Ice King, Inc.*, 74 Md. App. 183 (1988). To prove negligent misrepresentation, the plaintiff must show: (1) the negligent assertion of a false statement by the defendant owing a duty of care to the plaintiff; (2) the intention of the defendant for the plaintiff to act or rely upon the negligent assertion; (3) the knowledge of the defendant that the plaintiff will probably rely upon the negligent assertion or statement which, if erroneous, will cause damage; and (4) the incurring of damages caused by the defendant's negligence. *Goldstein v. Miles*, 159 Md. App. 403 (2004); *Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41 (2002). Plaintiff fails to demonstrate the requisite facts to establish a *prima facie* case of negligent misrepresentation against AMVETS.

"A plaintiff cannot recover for loss of an orally created expectancy that is directly contrary to the terms of the written agreement." *Allen v. United States Fidelity & Guaranty Co.,* 5 I.E.R. Cas. (BNA) 1253, at *22 (D. Md. Feb. 13, 1990) (court dismissed former employee's claim that employer negligently misrepresented that he would remain employed on an annual basis was directly contradicted by the employment application he signed which stated that his employment was at-will) (*citing Kardios Systems Corp. v. Perkin-Elmer Corporation*, 645 F. Supp. 506, 511 (D. Md. 1986)). As the terms of her written offer and the employee Manual made clear that she was an at-will employee, Plaintiff cannot recover on any claim that she relied on a contrary oral representation, and Defendant is entitled to judgment as a matter of law.

Moreover, Goode's allegations fail to set forth an actionable claim.  Goode asserts that because Mr. King and Ms. Isaja made statements that there were many long-time employees at AMVETS and that the organization provided a pleasant work environment, they supplied her with false information to "cajole" her into accepting the position.  *See* Complaint, ¶¶ 177-78.  She further makes the absurd allegation that Mr. King induced her into accepting the position on false pretenses (*Id.* at ¶ 180), with the intention of conspiring with another employee to hire an outsider almost a year later (*Id.* at ¶ 183).  Goode's Complaint fails to make these allegations with any specificity, which means the negligent misrepresentation claim cannot survive a Rule 12(b)(6) motion.  Plaintiff's bald assertions that representatives of AMVETS made negligent misrepresentations during her interview for the Meeting Planner position are simply not enough to meet *Iqbal's* standards of particularity in pleading.  *See MacGill v. Blue Cross of Maryland, Inc.,* 77 Md. App. 613, 551 A.2d 503, *cert. denied,* 315 Md. 692 (1989) (where an employment manual or policy expressly states the terms of an employment agreement, statements made during a prospective employee's interview cannot serve as the basis for a negligent misrepresentation claim); *Castiglione v. Johns Hopkins Hospital,* 69 Md. App. 325, 517 A.2d 786, *cert. denied,* 309 Md. 325, 523 A.2d 1013 (1986).  Nor does Plaintiff's Complaint satisfy the pleading standards of *Twombly*, since this Court should not be asked to speculate about the details of the allegations Plaintiff carelessly or purposefully omitted.  Thus, Count VII of the Complaint must be dismissed.

**H.** <u>Count VIII</u> **– Intentional Misrepresentation And Fraud Claims Must Fail; The Alleged Statements Made Were Too Broad And Vague To Establish Detrimental Reliance.**

In order to state a claim for intentional misrepresentation and fraud, a plaintiff must show: (1) the defendant asserted a false representation of a material fact to the plaintiff; (2) the defendant knew that the representation was false or it was made with reckless disregard for the truth; (3) the defendant made the false representation for the purpose of defrauding the plaintiff; (4) the plaint relied with justification upon the misrepresentation; and (5) the plaintiff suffered damages as a direct result of the reliance upon the misrepresentation. *Hoffman v. Stamper,* 385 Md. 1, 28-31 (2005). The elements of intentional misrepresentation and fraud must be pled with specificity. Where fraud is relied on, the pleading must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defense accordingly, and since fraud must be clearly proved it must be distinctly stated. *First Federal Sav. & Loan Assoc. v. Equitable Bank*, 1988 WL 167703 (D. Md., April 5, 1988) (where the plaintiff fails to assert specific statements supporting fraudulent misrepresentations the claim must fail); *Sass v. Andrew*, 152 Md. App. 406 (2003) (to prove misrepresentation or fraud, a plaintiff must show that she relied on a fact that was misrepresented and that fact was material to her entering into the agreement; otherwise the intentional misrepresentation or fraud claim must fail).

Rule 9(b) of the Federal Rules of Civil Procedure similarly requires that "[i]n alleging fraud…a party must state with particularity the circumstances constituting fraud." As the Fourth Circuit has held, the "'circumstances' required to be pled with particularity are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *See Harrison v. Westinghouse Savannah*

*River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting Wright and Miller, *Federal Practice and Procedure*, Civil § 1297 at 590 (2d ed. 1990)).

As discussed below, the Complaint fails to allege with sufficient specificity any detrimental reliance on the allegedly fraudulent promise, and should therefore be dismissed.  In addition, the intentional misrepresentation and fraud claim must also be dismissed because, as a matter of law, Plaintiff could not reasonably have relied on any alleged oral promises because they were vague and directly contrary to the clear written documentation provided by AMVETS.

**1.  The Complaint Fails To Allege Sufficient Detrimental Reliance On The Allegedly Fraudulent Promise.**

In order to recover under a cause of action for fraud, a plaintiff must prove damages which are caused by her detrimental reliance on a defendant's material misrepresentation. *Sass,* 152 Md. App. at 422.  The Complaint fails to allege with the required specificity any detrimental reliance by Goode on Mr. King's allegedly fraudulent promise during her interview.  Simply taking a position with AMVETS is not sufficient to establish detrimental reliance.  *See McDermott,* 18 Fed. Appx. at 122 (finding that because "[plaintiff's] employment was at-will, he could not reasonably rely on the employer's statement of his intent to employ him."); *McNierney v. McGraw-Hill, Inc.*, 919 F. Supp. 853, 861 (D. Md. Nov. 7, 1995) ("Because, [plaintiff's] employment could be terminated at the pleasure of either party at any time he was not justified in relying on the [employer's] statement of intent to hire him.").

Individuals regularly accept positions with employers with the hopes and expectations that it will be long-term position.  However, accepting an employment offer, without anything further, cannot equate to detrimental reliance, even where the plaintiff alleges that she had other employment offers which she rejected, as Goode does here.  *Adler v. American Std. Corp.*, 538

F. Supp. 572, 581 (D. Md. 1982), *aff'd in part, rev'd in part,* 830 F. 2d 1303 (4th Cir. 1987). *See also, White v. I.T.T.,* 718 F. 2d 994, 997 (11th Cir. 1983), *cert. denied*, 466 U.S. 938 (1984) (court interpreting analogous Georgia at-will doctrine stated that failure to reinstate employee after she returned from maternity leave could not be actionable as fraud since promise was unenforceable because employment was at-will); *Sneed v. American Bank Stationary Company*, 764 F. Supp. 65, 68 (W.D. Va. 1991) (interpreting Virginia's analogous at-will doctrine and stating that plaintiff's reliance on the defendant's representations was not reasonable because the underlying employment contract, being terminable at-will, is unenforceable).

Goode was in search of employment and applied for the Meeting Planner position with AMVETS. She interviewed, was offered the position, agreed with the terms of the offer and accepted the position. Just as if she accepted a position with a company that later went bankrupt causing her to lose her job, AMVETS was forced into a RIF because of the ailing economy and, unfortunately, Goode's position was one that was abolished. An employee's misplaced reliance on a belief that her employment would continue plays no part in the at-will employment world – it is a fact of the labor market itself.

### 2. Plaintiff Could Not Reasonably Have Relied On The Allegedly Fraudulent Promise Because The Alleged Promise Was Too Vague And Indefinite.

In order to state a claim of intentional misrepresentation and fraud, a plaintiff must not only allege detrimental reliance, her reliance on the fraudulent misrepresentation must be <u>reasonable</u>. *A & E Supply Company, Inc. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 672 (4th Cir. 1986) (external citation omitted). *See also Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994) ("A finding of either actual or constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in

such a way as to induce a reasonable person to believe it, with the intent that the person will act upon the representation.").  The representation must be definite, and mere vague, general, or indefinite statements are insufficient, because they should, as a general rule, put the hearer upon inquiry, and there is no right to rely upon such statements.  *Fowler v. Benton,* 229 Md. 571, 579 (1962).

The allegedly fraudulent representation at issue in this case — "that Goode could work for AMVETS "for as long as she chose to" — represents a textbook example of a vague and indefinite statement.  *See* Complaint, ¶ 45.  The statement was so vague and indefinite that no reasonable person justifiably could have relied on it, and the fraud claims therefore must be dismissed.  *Sass, supra*.  Without such reasonable reliance, Plaintiff cannot establish or maintain her claims of intentional misrepresentation and fraud.

**I.   <u>Count IX</u> – Plaintiff's Claim of Intentional Infliction Of Emotional Distress Should Be Dismissed Because She Fails To State A Claim Upon Which Relief Can Be Granted.**

In order to state a claim for intentional infliction of emotional distress, a plaintiff must establish four elements: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe.  *Caldor v. Bowden*, 330 Md. 632, 641-42 (1993) (citing *Harris v. Jones*, 281 Md. 560 (1977)).

The Maryland Court of Appeals has made clear that liability for the tort of intentional infliction of emotional distress should be imposed ***sparingly*** and its "balm reserved for those wounds that *are* truly severe and incapable of healing themselves."  *Hamilton v. Ford Motor Credit Co., et al.,* 66 Md. App. 46, 61 (1986).  Due to the extremely high factual threshold

required for this tort, courts will carefully scrutinize the factual basis for each claim in order to prevent abuse by plaintiffs and to minimize the problems inherent in recognizing a tort of this character. *See Harris,* 281 Md. at 567; *Dickson v. Selected Risks Ins. Co.*, 666 F. Supp. 80, 81 (D. Md. 1987) ("[I]n order to prevent litigation abuse, the trial courts necessarily play a vital role in making a threshold determination of whether a valid claim for intentional infliction of emotional distress has been stated.").

Plaintiff's claim must fail because, most notably, the facts alleged do not establish that the conduct alleged was extreme and outrageous. Maryland courts have consistently rejected the notion that mere unfair or abusive conduct in the workplace rises to the level of extreme and outrageous conduct. *See, e.g., Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 681 (1992) (allegations that employer harassed plaintiff, made her work 15 straight days, assigned substandard assistant managers to work under her, accused her without basis of theft, insisted that she undergo a polygraph examination, suspended her without pay in front of customers and other employees, and demoted her was not sufficiently outrageous); *Bagwell v. Peninsula Reg. Med. Ctr.*, 106 Md. App. 470, 514-15 (1995) (allegations that employer fired employee following negligent investigation and erroneous conclusion that employee was at fault in altercation with hospital patient were not sufficient outrageous), *cert. denied*, 341 Md. 172 (1996); *Leese v. Baltimore County*, 64 Md. App. 442, 468-69 (no outrageous conduct where employer refused to promote plaintiff and then fired him when he filed grievance concerning failure to promote), *cert. denied*, 305 Md. 106 (1985); *Beye v. Bureau of Nat'l Affairs*, 59 Md. App. 642, 655-57 (allegations that supervisors gave plaintiff poor performance ratings, passed him over for promotions in favor of less qualified employees, threatened to fire him, harassed

and physically assaulted him, and deceived him into resigning were "woefully inadequate" to constitute outrageous conduct), *cert. denied*, 301 Md. 639 (1984).  In strictly limiting recovery for intentional infliction of emotional distress in the workplace setting, the Maryland Court of Appeals has reasoned:

> The workplace is not always a tranquil world where civility reigns. Personality conflicts and angst over disciplinary actions can be expected.  Even a certain amount of arbitrary nastiness may be encountered at all levels in all occupations; this is a fact of life we must accept as readily as we recognize that employers and employees on the job interact differently than do friends at a summer picnic.  If anxiety from management decisions were "deemed so severe that no reasonable person could be expected to endure it, nearly all employees would have a cause of action for intentional infliction of emotional distress."

*Kentucky Fried Chicken*, 326 Md. at 679 (*quoting Heying v. Simonaitis,* 126 Ill. App. 3d 157 (1984)).

In the instant case, plaintiff alleges that Ms. Hart directed "unabated hostility and harassment" toward her (Complaint, ¶ 70), exhibited threatening and intimidating behavior (*Id.* at ¶ 71), and "tasked Ms. Goode with additional work unrelated to her function (*Id.* at ¶ 72).  After Goode allegedly reported Ms. Hart's conduct to AMVETS, Goode claims her pleas and concerns were ignored.  *Id.* at ¶ 78.  Finally, Goode alleges that Ms. Hart was made aware of Goode's complains and "vowed to retaliate" against her.  *Id.* at ¶ 83.  Goode fails to allege with any specificity how, when or where Ms. Hart made such a "vow," but simply asserts that such a "vow" was made.  While such conduct, if true, may be unpleasant, it is not sufficiently extreme

and outrageous to state a viable claim for intentional infliction of emotional distress under Maryland law.[12]  As a result, Count IX of the Complaint must be dismissed.

**V.**     **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice or grant summary judgment for Defendant AMVETS.

Respectfully submitted,
JACKSON LEWIS LLP


      /s/
Ariana Wright Arnold (Federal Bar No. 23000)
Jennifer Curry Bowman (Federal Bar No. 29038)
JACKSON LEWIS LLP
2800 Quarry Lake Drive, Suite 200
Baltimore, Maryland  21209
Phone: (410) 415-2000
Fax: (410) 415-2001
Ariana.arnold@jacksonlewis.com
Jennifer.bowman@jacksonlewis.com

*Counsel for Defendant,*
*American Veterans, Inc.*

---

[12]     Even if Goode's Complaint plead all the elements of a *prima facie* case of intentional infliction of emotional distress with specificity, her claim must fail because AMVETS cannot be held vicariously liable for the harassing actions of one of its employees.  In the context of intentional torts, "where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during the normal duty hours and at an authorized locality, the employee's actions are outside the scope of employment." *Sawyer v. Humphries*, 322 Md. 247, 254 (1991). *See also Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1992).  Thus, employers are vicariously liable for an employee's intentional tort only where the tortuous conduct was incident to or a foreseeable consequence of an employee's duties. *See Market Tavern v. Bowen*, 92 Md. App. 622, *cert. denied*, 328 Md. 238 (1992); *Wilson Amusement Co. v. Spangler*, 143 Md. 98 (1923).  Here, even assuming Goode's allegations about Ms. Hart's behavior are true, the conduct in no way furthered the business of AMVETS and was not authorized by AMVETS. AMVETS had an express written policy prohibiting harassment stating that "[n]o employee has the right to abuse or harass another employee." *See* Complaint, ¶ 74.  Additionally, Ms. Hart's alleged conduct was not incident to the performance of her duties. Thus, AMVETS cannot be held vicariously liable for the personal actions of one of its employees.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this February 3, 2012, a copy of the foregoing Motion to Dismiss and Supporting Memorandum was filed electronically through the ECF System and thereby served on counsel of record.


    /s/
Ariana Wright Arnold


4822-0004-1486, v. 1